**SIGNED this 31st day of March, 2016**

_____
Shelley D. Rucker
UNITED STATES BANKRUPTCY JUDGE

_____

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF TENNESSEE
SOUTHERN DIVISION

IN RE: MITCHILL STEPHEN BUTTRILL and
MARTHA SUZANNE BUTTRILL,   CASE NO.: 1:15-BK-10891-SDR
          CHAPTER 7
Debtors.

MEMORANDUM

The United States, acting on behalf of its agency the Army and Air Force Exchange Service ("AAFES"), has moved for retroactive modification of the automatic stay pursuant to 11 U.S.C. § 362(d)(1) and (2) so that it may retain $4,405 received from the Department of the Treasury as an offset recognized by 11 U.S.C. § 553. The Debtors oppose the relief requested on the grounds that AAFES has not proven it is entitled to an offset and that the Debtors' claim of exemption in the refund is superior to the right of setoff. Further, the Debtors contend that the actions taken by AAFES violated the stay and that the violation deprives AAFES of its right of offset and entitles the Debtors to damages.

1

The court finds that prior to the time the case was filed, the Debtors had a contingent interest in the overpayment of their income taxes and their entitlement to an earned income tax credit. Also prior to the filing date, AAFES had a right of offset and was entitled to apply any overpayment due to the Buttrills to its outstanding balance under 26 U.S.C. § 6402(d) and 11 U.S.C. § 553; however, that right could not be exercised without relief from the stay. 11 U.S.C. 362(a)(7). Following the filing and without seeking relief from the bankruptcy court, the Department of the Treasury exercised AAFES's right under the Treasury Offset Program to send the overpayment to AAFES for satisfaction of non-tax liabilities. The court finds that the stay was violated; but, the court also finds that the right to setoff held by AAFES under 26 U.S.C. § 6402(d) was preserved in bankruptcy, and the Debtors' contingent property interest was subject to the offset. Because the Debtors were not ultimately entitled to any refund, it appears that there are no damages warranted for the violation of the stay under the circumstances of this case. Finally, the court does not find any other conduct on the part of AAFES that would justify the court exercising its discretion and finding that the setoff should be disallowed. The motion will be GRANTED in part and DENIED in part and the automatic stay will be modified and the offset permitted subject to any injured spouse claim which Mrs. Buttrill may have.

This court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334(a) and (b) and 157(b)(2)(G). These are the court's findings of fact and conclusions pursuant to Fed. R. Bankr. P. 7052, as made applicable to contested matters by Fed. R. Bankr. P. 9014(c).

**Stipulated Facts**

The parties have stipulated the following facts.

On or about February 8, 2008, Debtor-husband opened a Take It Home Today account with AAFES. This program is an in-house credit plan designed for purchasing furniture, major

appliances and similar merchandise with a minimum purchase price of $299. Debtor-husband's Take It Home Today account originally became delinquent on June 5, 2013.

Additionally, on or about May 18, 2008, Debtor-husband opened a Military Star account with AAFES. This program is an in-house credit plan that provides the military and authorized family members affordable credit at AAFES facilities worldwide. *See* 10 U.S.C. § 2481; 32 C.F.R. § 842.127. Debtor-husband's Military Star account originally became delinquent on August 16, 2013. On January 11, 2014, the delinquent Take It Home Today debt of $5,468.35 was placed in the Treasury Offset Program ("TOP") pursuant to 31 U.S.C. § 3720A. On January 21, 2014, the delinquent Military Star debt of $8,199.91 was also placed in TOP pursuant to 31 U.S.C. § 3720A.

Debtors filed a voluntary petition under chapter 7 on March 5, 2015. Debtors claimed an exemption in an anticipated tax overpayment[1] in the amount of $3,000 and no objection to that claim of exemption was filed. On March 10, 2015, Debtors amended Schedules B and C to cover the correct amount of the anticipated tax overpayment and fully exempt the amount. No objection to the amended claim of exemption has been filed.

On or about March 19, 2015, the Internal Revenue Service, pursuant to the TOP, withheld Debtors' federal income tax overpayment of $4,405 for the tax year of 2014. Debtors were entitled to a credit of $3,370 for the Earned Income Credit and $814 for the Additional Child Tax Credit. Debtors had withheld $221 from wages which were previously paid to the Internal Revenue Service.

---

[1] Schedule C actually refers to the exempted property as "Anticipated Tax Refund." Schedule C, Case no. 1:15-bk-10891 (Doc. No. 1, p.15). An amended Schedule C was filed on March 3 and continued to describe the exempted property in question as "Anticipated Tax Refund" in the amount of $4,210. (Doc. No. 10, p. 4.)

Upon being informed of the bankruptcy petition, AAFES froze the account to maintain the status quo on its claim for offset while addressing the relief from stay. The Debtors were discharged on June 18, 2015, and no objections to discharge were filed.

The court makes the additional findings of fact. This motion for relief was filed on July 1, 2015. At the hearing on the motion on July 30, 2015, the parties announced that they were submitting the issues to the court on the stipulated facts. The court also asked the parties whether they could stipulate that the copies of the agreements attached to AAFES's motion were true and correct copies of the documents that created the debt between AAFES and the Debtors. The parties agreed that those were the documents.

The applications of the Take It Home Today ("TIHT") and the Military Star accounts are both signed by only Mr. Buttrill. Application for TIHT account (Doc. No. 15-2); Application for Military Star account (Doc. No. 15-4). The introduction to the summary of the Take It Home Today program terms provides that the words "you" and "your" refer to the person who signs the application. Summary of TIHT Terms, p.1 (Doc. No. 15-1). The words "we" and "our" refer to the exchange credit program of AAFES, NEXCOM and the Marine Corps Exchange, which is administered by the Army and Air Force Exchange Service. *Id.* Section 11, entitled "Charge-off Accounts" of the Summary of TIHT Terms, provides:

> Delinquent Accounts deemed not collectable under the above terms and conditions will be closed and transferred to AAFES collections. AAFES Collections collects debt in accordance with the Debt Collection Improvement Act of 1996, 31 USC 3720, Deficit Reduction Act 26 USC 402 (d) and 31 USC 3720 A, the Federal Claims Collection act[sic] of 1996 or federal pay offset under 5 USC 5514. In addition to the interest charges specified in these terms and conditions charged-off accounts will also incur additional penalties, interest, and collection costs as allowed by law. The charge-off APR will be the greater of the APR of the TAKE IT HOME TODAY program or the 5 year U.S. Treasury note rate in effect on the first business day of the year in which the account charges off +8.94%. The accounts may be forwarded to a commercial collection agency or federal agency for collection action including Administrative Wage Garnishment of civilian wages, offset for federal employee pay, including retirement pay, or may be

4

submitted to the Department of the Treasury for offset against any federal payments due you, including a federal income tax refund, federal salaries or federal retirement pay.

(AAFES Mot. for Relief, p. 2-3 (Doc. No. 15-1)).  The Military Star account summary of terms contains identical language in section 12. (AAFES Mot. For Relief, p.3 (Doc. 15-3)).

## ISSUES

1. Did AAFES have a right to set off the overpayment prior to the commencement of the Debtors' case?

2. Did the Debtors have a property interest in the overpayment at the time the case was filed that was protected by the automatic stay?

3. Did the Department of the Treasury's act of applying the overpayment to the AAFES debt violate the automatic stay?

4. Does a right of offset constitute "cause" for relief from the stay?

5. Has the uncontested claim of exemption deprived AAFES of the ability to exercise its right of offset? Does section 522(c) defeat the preservation of the offset right provided in section 553?

6. Did AAFES's violation of the automatic stay of 11 U.S.C. § 362(a) deprive AAFES of the right to set off the refund?

7. Are the Debtors entitled to any damages for the violation of the stay?

## ANALYSIS

### I.    Setoff Rights of AAFES

In a case with similar facts, Judge Parsons of this district discussed the Bankruptcy Code's treatment of the right of offset.

> Section 553 of the Bankruptcy Code addresses setoff in the bankruptcy context. It provides in part the following:
>> Except as otherwise provided in this section and in sections 362 and 363 of this title, this title does not affect any right of a creditor to offset a mutual debt owing

> by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case. . . .
>
> The United States Supreme Court has noted that § 553 does not create a federal right of offset; it only preserves in bankruptcy whatever right otherwise exists. *Citizens Bank of Maryland v. Strumpf,* 516 U.S. 16, 18, 116 S.Ct. 286, 133 L.Ed.2d 258 (1995). "The right of setoff (also called 'offset') allows entities that owe each other money to apply their mutual debts against each other, thereby avoiding 'the absurdity of making A pay B when B owes A.' " *Id.* (quoting *Studley v. Boylston Nat'l Bank of Boston,* 229 U.S. 523, 528, 33 S.Ct. 806, 57 L.Ed. 1313 (1913)). Section 553 preserves the right of setoff where there are mutual, prepetition obligations owing between the debtor and the creditor and a right to setoff the obligations exists under nonbankruptcy law. *In re Holder,* 182 B.R. 770, 775 (Bankr. M.D. Tenn.1995).

*In re Bourne*, 262 B.R. 745, 748-49 (Bankr. E.D. Tenn. 2001).

In this case, AAFES's right to setoff is created by a federal statute. The bankruptcy court for the Western District of Virginia, in a case similar to the one before the court, described the operations of that statute.

> In this case, the "applicable nonbankruptcy law" authorizing setoff is the Treasury Offset Program, which authorizes the Secretary of the Treasury to intercept an individual's tax overpayment and apply it to preexisting debts. 26 U.S.C. § 6402. This statute has multiple subsections, including subsection (a) that permits the Secretary of Treasury to offset a tax overpayment to satisfy tax liability and additional subsections under which the Secretary of the Treasury may offset to satisfy nontax debt. *See id.* at 6402(c), (d), (e) and (f).
>
> Under the provisions of 26 U.S.C. § 6402(d)(1), when the Secretary receives notice that a taxpayer owes a "past-due legally enforceable debt" to another federal agency, "the Secretary *shall* ... reduce the amount of any overpayment payable to such person by the amount of such debt...." *Id.* at § 6402(d)(1)(A) (emphasis added). The provisions further instruct the Secretary to forward the withheld amount to the appropriate federal agency and notify the taxpayer of the offset. *Id.* at § 6402(d)(1)(B) & (C). After compliance with the provisions of the intercept statute, the Secretary must refund any remaining balance to the taxpayer. *Id.* at 6402(a).

*In re Sexton*, 508 B.R. 646, 658 (Bankr. W.D. Va. 2014) (footnotes omitted), *appeal dismissed sub nom. U.S. Dep't of Agric. v. Sexton*, 529 B.R. 667 (W.D. Va. 2015).

The court finds that mutual debts between AAFES and the Debtors existed prepetition. The United States owed $4,405 to the Debtors for a tax overpayment which included an Earned

6

Income Credit, an Additional Child Tax Credit, and an overpayment of withholding taxes. The debt matured on December 31, 2014, a date prior to the date of the commencement of the bankruptcy case. *In re Bourne*, 262 B.R. 745, 749 (Bankr. E.D. Tenn. 2001).

Mr. Buttrill owed AAFES, an agency of the United States, $8,199.91 for his purchases under the TIHT and Military Star accounts. His debt matured prior to his filing for bankruptcy.

The Debtors challenge whether the government demonstrated that the debts were mutual. The court is not persuaded that AAFES is not the same entity as the Department of Treasury. The majority of courts addressing this issue have found that the United States and its various agencies and departments comprise a unitary creditor. *In re Bourne*, 262 B.R. at 749; *In re Holder*, 182 B.R. 770, 775 (Bankr. M.D. Tenn. 1995). The court finds that AAFES and the Department of Treasury are one creditor.

The Debtors also challenge the mutuality on the basis that Mrs. Buttrill does not owe anything to AAFES. Generally, when spouses file joint returns, each has a separate interest in any overpayment based on their separate incomes. Rev. Rul. 74-611, 1974-2 C.B. 399, *amplified by* Rev. Rul. 85-70, 1985-1 C.B. 361. The extent of each spouse's interest is determined by the property law of the state in which the taxpayers reside. Rev. Rul. 85-70, 1985-1 C.B. 361. It appears that since Mrs. Buttrill is not liable to AAFES, she is entitled to her portion of the overpayment; however, in practice, the IRS will offset the entire overpayment from a joint return to the benefit of one spouse unless the "injured spouse" (the one who does not owe the previous obligation) files Form 8379, *Injured Spouse Allocation*. Rev. Rul. 84-171, 1984-2 C.B. 310; IRM 25.15.1.2.5, *Relief from Joint and Several Liability-Injured Spouse Claims*. Once the injured spouse has filed a claim, the IRS is required to refund his or her share of the

7

overpayment. IRM 25.15.1.2.5, *Relief from Joint and Several Liability-Injured Spouse Claims*; 31 C.F.R. §§ 285.2(f) and (g).

Because there is no evidence that Mrs. Buttrill has filed Form 8379, the IRS is entitled to setoff the entire overpayment made by the Buttrills. The court will address Mrs. Buttrill's right to make an injured spouse claim in its discussion in Section VI below.

Under the nonbankruptcy law applicable to these mutual claims, AAFES has a right to setoff the amount owed to Mr. Buttrill against the amount owed by Mr. Buttrill because the Bankruptcy Code "does not affect any right of a creditor to offset a mutual debt owing by such a creditor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case." 11 U.S.C. § 553(a). As to Mrs. Buttrill, AAFES may offset her portion of the overpayment until such time as she files a claim to receive such portion. IRM 25.15.1.2.5, *Relief from Joint and Several Liability-Injured Spouse Claims*; 31 C.F.R. §§ 285.2(f) and (g).

But the right of offset preserved under subsection (a) of section 553 is not absolute. That section states that Title 11 does not affect any right of the creditor ***except as otherwise provided in section 362***, so the court must also examine what effect section 362 may have on AAFES's right.

### II. Debtors' Right to Stay Protection

Once a debtor files a bankruptcy petition, the automatic stay of 11 U.S.C. § 362(a) arises to protect him from not only the commencement or continuation of legal action against him, but also from any acts to obtain possession of, create or enforce liens against, or collect assets included in the debtor's estate. In fact, the act of offset against property of the estate is specifically prohibited. 11 U.S.C. § 362(a)(7).

8

Property of the estate is defined in section 541(a) as "all legal or equitable interests of the debtor in property as of the commencement of the case . . . wherever located and by whomever held." 11 U.S.C. § 541(a)(1). "Unless expressly excluded, every conceivable interest of the debtor . . . regardless of the extent of the interest becomes property of the estate." *In re Quade*, 482 B.R. 217, 225 (Bankr. N.D. Ill. 2012). "In fact, every conceivable interest of the debtor, future, nonpossessory, contingent, speculative, and derivative is within the reach of section 541." *In re Yonikus*, 996 F.2d 866, 869 (7th Cir. 1993).

Cases which have considered what interest the debtor has in an overpayment have found that the debtor has a contingent interest in the overpayment of taxes for the prior year. That interest accrues on midnight of December 31 of the year prior to the year in which the debtor files bankruptcy. That contingent interest is included as property of the estate. *Addison v. U.S. Dept. of Agric. (In re Addison)*, 533 B.R. 520, 529 (Bankr. W.D. Va. 2015); *U.S. Dept. of Agric. Rural Housing Service v. Riley,* 485 B.R. 361, 365 (W.D. Ky. 2012). Therefore, unless there is an exception on which AAFES may rely, it may take no action to enforce its offset without relief from this court.

**III. Application of Overpayment as a Violation of the Stay**

There is an exception from the operation of the stay for an offset by a governmental unit, but that exception is limited to an offset of a tax liability. 11 U.S.C. § 362(b)(26). The exception does not apply in this case because the AAFES debt is not a tax liability. It arose from the purchase of consumer goods.

Having found no exception to the application of the stay, the court concludes that AAFES may not offset the debt owed to it against the debt owed to the debtors without obtaining relief from the stay. The act of notifying the debtors that the Department of Treasury was applying the

9

Case 1:15-bk-10891-SDR   Doc 33   Filed 03/31/16   Entered 03/31/16 16:48:59   Desc
Main Document    Page 10 of 19


debt to AAFES's balance after the bankruptcy had been commenced was an exercise of an offset right without relief from the stay and as such it was a violation.

### IV. Grounds for Relief from the Stay

AAFES now comes to the court for relief from the stay in the form of an annulment of the stay. 11 U.S.C. § 362(d) sets forth the grounds for relief from the stay.  It provides that the court shall grant relief – for example, by terminating, annulling, modifying or conditioning the stay – "for cause, including the lack of adequate protection of an interest in property." 11 U.S.C. § 362(d)(1).  In addition, § 362 provides that the court shall grant relief from the stay of an act against the property if the debtor has no equity in the property and the property is not necessary for an effective reorganization.  11 U.S.C. § 362(d)(2). AAFES, as the movant seeking relief must first establish a prima facie case that cause exists for relief under section 362(d)(1). Once a prima facie case has been established, the burden shifts to the Debtor to show that relief from the stay is not warranted." *United States v. Gould (In re Gould)*, 401 B.R. 415, 426 (9th Cir. B.A.P. 2012). Pursuant to 11 U.S.C. § 362(g), the Debtors bear the burden of proof on all issues in opposing the relief from stay, except for the showing of lack of equity.

"Courts generally recognize that, by establishing a right of set off, the creditor has established a prima facie showing of cause for relief from the automatic stay under § 362(d)(1)." *Gould*, 401 B.R. at 426 (citing *In re Ealy*, 392 B.R. 408, 414 (Bankr. E.D. Ark. 2008)). The court has previously found that AAFES has a right of offset so it also finds that cause exists. Further, the amount of the claim of AAFES exceeds the amount owed to the Debtors so the court also finds that the government has shown that there is no equity for the debtors in the overpayment. "Because Chapter 7 is not a reorganization chapter, all the creditor need prove in a Chapter 7

case is that the debtor has no equity in the collateral." BANKRUPTCY LAW MANUAL, 5th Ed. § 7:54; *In re Martens*, 331 B.R. 395, 398 (B.A.P. 8th Cir. 2005).

The Debtors raise two defenses to the relief requested by AAFES is not warranted. One is based on section 522(c)'s protection of exempted property from prepetition claims and the other rests on the equitable powers of the court to disallow an offset where there has been a violation of the stay.

The Debtors argue that relief is not warranted because the property has been exempted and is necessary for the Debtors' fresh start. The issue of whether the right of setoff may be defeated by a claim of exemption has divided many courts. One court that found that setoff could be defeated by an exemption framed the issue as follows:

> The relevant provisions of both the Bankruptcy Code and the Internal Revenue Code's Treasury Offset Program are unambiguous—the automatic stay protects the property included in the bankruptcy estate except for the enumerated exceptions, and the Secretary of the Treasury must comply with the offset procedures when notified of the existence of a debt to another agency. What is not clear is whether the mandatory offset procedures of the Tax Code either usurp the Bankruptcy Code provisions or change the character of the property interest to affect an exclusion from the Bankruptcy Code's protections.

*In re Sexton*, 508 B.R. 646, 658-59 (Bankr. W.D. Va. 2014) *appeal dismissed sub nom. U.S. Dep't of Agric. v. Sexton*, 529 B.R. 667 (W.D. Va. 2015).

This court finds that allowing the offset does not usurp the provisions of the Bankruptcy Code but rather honors them. Preservation of the right of offset recognizes the contingent nature of that interest rather than changing its character.

### V.    Setoff Not Defeated by Claim of Exemption

As to the first defense, the Debtors contend that the right of offset may be defeated by an uncontested claim of exemption in the tax refund. The Debtors argue that because they claimed an exemption in their 2014 tax refund on Schedule C and because AAFES did not object to that

11

exemption in a timely manner, "unless the case is dismissed, property exempted under this section [522] is not liable during or after the case for any debt of the debtor that arose, or that is determined under section 502 of this title as if such debt had arisen, before the commencement of the case. . . ." 11 U.S.C. § 522(c). The Debtors have ample support for their position. A Virginia bankruptcy court, after a thorough and thoughtful review of the split in authorities held "absent a motion for relief from the stay and a challenge to the claimed exemption, the Debtor's properly claimed exemption. . . trumps the [creditor's] setoff rights preserved under Section 553." *In re Addison*, 533 B.R. 520, 530-1 (Bankr. W.D. Va. 2015). *See also In re Sexton,* 508 B.R. at 662 (Bankr. W. D. Va. 2014).

In fact, the Debtors' position has been referred to as the "majority" position. *Miller v. United States (In re Miller)*, 422 B.R.168, 172 (W.D. Wis. 2010) ("As the bankruptcy court and the parties recognize, more courts have held that exempt property is not subject to setoff, than have reached the opposite conclusion.")  The majority relies on the Bankruptcy Code's provision that property exempted is only subject to a prepetition claim that falls within specific exceptions, and that setoff claims are not listed as one of those exceptions in that subsection. 11 U.S.C. 522(c). The *Sexton* court rejected the argument made by AAFES in this case.  In *Sexton*, the government argued that there was a distinction between a refund and an overpayment that allowed the setoff mandated in the TOP to defeat the debtor's interest in the overpayment. The *Sexton* court concluded that the automatic stay protects the property included in the bankruptcy estate except for the enumerated exceptions. The exemption removes it from the estate; and once exempted, it is protected from the prepetition claim of AAFES pursuant to section 522(c). The *Sexton* court found that the failure to object removed the contingency and removed the refund from the government's reach. *In re Sexton*, 508 B.R. at 662.

However, this district has a case on point which adopts the "minority" position. *In re Bourne*, 262 B.R. 745. 756-58 (Bankr. E.D. Tenn. 2001). In a case with very similar facts, the court reviewed the situation and found that although the debtor had a contingent interest in the overpayment, the Bankruptcy Code's preservation of the right of setoff was a basis for lifting the stay and allowing the offset. The court rejected the argument that an exemption claim could defeat the setoff right. *Id.* at 757. The court recognized that Tennessee state law provided that a creditor may not offset its claim against exempt property, but noted that where property is a federal tax refund, the right of setoff was not based on state law. It was premised on a federal statutory right contained in 26 U.S.C. § 6402. *In re Bourne*, 262 B.R. 745, 752-3, n.2. After discussing the basis for the majority position, the court concluded:

> This court disagrees with the majority's conclusion that allowing exemption rights under § 522(c) to supersede a creditor's setoff rights under § 553 gives effect to both provisions and prevents the nullification of § 552(c). To the contrary, by giving primary effect to the exemption rights of a debtor, the offset right of a creditor is often completely nullified, as would be the result in the instant case. It is just as logical to give effect to both provisions by holding that a debtor may claim an exemption which is valid as to all creditors except one having a right of setoff. . . . Based on the forgoing analysis, this court concludes that the debtor herein has no greater exemption rights with respect to her tax refund than she would have had if this bankruptcy had not been filed."

*Id.* at 757.

The minority position has gained additional followers in the past fifteen years since the issuance of the *Bourne* opinion. Even the *Sexton* court, which adopted the majority position, noted that there was a recent trend of cases finding that the mandatory offset provisions in the Internal Revenue Code resulted in defeating the debtor's property interest, most notably the case of *In re Luaongo*, 29 F. 3d 323 (5th Cir. 2001).

> The courts following *Luongo* held that the refund did not vest in the estate until after the Secretary of the Treasury complied with the provisions of 26 U.S.C. 6402(a). Only the remainder after the offset was property of the estate. *See Pigott,* 330 B.R. at 799–800; *In re Baucom,* 339 B.R. 504, 506–07 (Bankr.W.D.Mo.2006); *Gordon v. United States* (*In re*

13

*Sissine* ), 432 B.R. 870, 883 (Bankr.N.D.Ga.2010). Thus, if no portion of the overpayment remained after setoff, the debtor retained no interest in the refund to exempt. *See Baucom,* 339 B.R. at 507; *Lyle v. Santa Clara County Dep't of Child Support Services* (*In re Lyle* ), 324 B.R. 128, 131 (Bankr.N.D.Cal.2005); *Beaucage v. IRS,* 342 B.R. 408, 411 (C.D.Mass.2006); *Jones v. IRS* (*In re Jones* ), 359 B.R. 837, 841 (Bankr.M.D.Ga.2006). Many of these courts, however, acknowledge that it remains a minority position. *See, e.g., Pigott,* 330 B.R. at 799 ("The opposing view [to the majority view] is set forth in [a list of cases, including *Luongo*.]"); *Miller,* 422 B.R. at 172 (acknowledging that the cases following *Luongo* were a "minority" position).

*In re Sexton*, 508 B.R. 646, 660 (Bankr. W.D. Va. 2014) *appeal dismissed sub nom. U.S. Dep't of Agric. v. Sexton*, 529 B.R. 667 (W.D. Va. 2015).

Another frequently cited case supporting the "minority" position is *U.S. Department of Agriculture Rural Housing Service v. Riley*, 485 B.R. 31 (W.D. Ky. 2012). In *Riley*, the facts were similar to the case at hand. The debtor owed a federal agency for a deficiency and the IRS took the debtor's exempted tax refund and applied it to the deficiency without objecting to the exemption. The court walked through the statutory scheme set out in 26 U.S.C. § 6402 discussed above as the basis of AAFES's right of offset. The court concluded that until the overpayment is determined to be a refund, there is no property interest which the debtor may exempt.

> "Generally a debtor's claim to a tax refund is property of the estate, However, the debtor's interest in a refund is contingent upon the statutory determination of what portion of the overpayment remains for the debtor to receive as a refund." *USDA v. Riley*, at 365 (citations omitted) "Only once the Secretary has applied the limitation in subsections (c), (d), (e) and (f)[of 26 USC 6402], does the interest in the balance change from an overpayment to a tax refund."

*Id.* at 366-7.

This court is not prepared to go so far as to hold that there is no property of the estate if there is an overpayment in existence at the time of filing, but the court does find that there is no indefeasible property interest which a debtor may exempt. The court finds the *Bourne* decision to be the more persuasive analysis of this issue. The debtor has a property interest in the tax

14

refund, but it is a contingent interest that may be defeated by a remedy acknowledged and preserved by the Bankruptcy Code. The right of AAFES under the TOP was preserved and the debtor's exemption of the refund only applied to the amount that remained after the statutory offsets were applied. In this case, the only possible interest that remains to exempt after the offset is Mrs. Buttrill's injured spouse claim to the extent that she has one. The stipulated facts did not address whether she had such an interest although the debtors' memorandum referred to her intention to file such a claim. Opposition Memorandum at 3. (Doc. No. 29).

In considering which position to adopt, the court finds the "minority" position more persuasive. The combination of the reconciliation of 553 contained in *Bourne* and the offset analysis contained in *Riley* come closest to giving meaning to all of the statutes involved.

 The minority view gives priority to section 553's preservation of the creditor's setoff rights available under applicable nonbankruptcy law. It finds the extent of the debtor's property interest is limited by what his or her interest would be outside of bankruptcy.  Consequently, the debtor may only exempt what the applicable law allows the debtor to retain outside of bankruptcy. Even a trustee cannot require a creditor who owes a debt to the estate to make the payment to the estate if the debt is subject to offset. 11 U.S.C. § 542(b).

In weighing the two analyses, the court finds the minority position more convincing when related to the tax offset program. The law applicable to the offset is federal law and there is no obligation to turn over funds to the debtors under 26 U.S.C. § 6402. The Bankruptcy Code does not require the payment of the debt so the court does not find that the spirit of the code is violated by allowing the setoff, even if the debtor tries to defeat the offset by claiming an exemption. The concern that section 6402 may give the federal government a stronger claim than any other unsecured creditor does not mean that the section should be ignored. In other places in

the Bankruptcy Code governmental units are given preferred or priority treatment. *See* 11 U.S.C. §§ 502(b)(1)(B); 507(a)(8); 523(a)(1); 1129(a)(9)(C); 1322(a)(2); Fed. R. Bankr. P. 3002(c)(1).

The Debtors also argue that the offset claim is no longer enforceable. The discharge was granted in this case without an objection to the exemption or the discharge. The debtor in *In re Bourne* made a similar argument; and there, the court found that discharge injunction operated as a stay against an act, to collect, recover, or offset any such debt as a personal liability of the debtor." Relying on *In re Conti*, 50 B.R. 142, (Bankr. E.D. Va. 1985), the court held that prepetition setoff rights are preserved in the bankruptcy case and there is no basis for finding that the right is extinguished upon discharge. *In re Bourne*, 262 B.R. at 758 (includes a string cite of cases holding that there was no violation of the discharge injunction when a creditor exercised a right of setoff which existed prepetition). This court also holds that the discharge does not affect AAFES's right to offset.

**VI. AAFES's Violation of the Automatic Stay of 11 U.S.C. § 362(a) Did Not Deprive AAFES of the Right to Offset the Refund.**

The second defense the Debtors raise to relief from the stay is that it is inequitable to grant relief to a party that has violated the stay.

The case of *In re Southern Industrial Banking Corp.*, 809 F.2d 329 (6th Cir. 1987) is frequently cited for the proposition that "[t]he application of setoff, however, is permissive and lies within the equitable discretion of the trial court." *Id.* at 332. This court notes that *In re SIBC*, involved a specific provision of section 553 which contains an exception to the preservation of the right of offset where a creditor acquires a debt for the purpose of obtaining a right of setoff. Based on the policies that one creditor should not be favored unfairly over the class of creditors and, when justice dictates, setoff may be denied (*Id.* at 332.), the court exercised its discretion to disallow the offset. Those facts are not present in this case. The debt of AAFES was in existence

16

long before the tax liability arose, and there is no indication of any action on the part of the government to obtain the AAFES claim to avoid paying the Debtors a refund.

The IRS contends that its withholding of the refund was the result of a technical violation that occurred close in time to the debtors' filing, but the court finds that a delay of several months before filing a motion for relief is more than a technical violation. While the original decision to withhold the funds for AAFES on March 19, 2015 may have been a technical violation as the notice of the bankruptcy, filed on March 10, 2015, worked through the system, the delay in filing for relief, which occurred on July 1, 2015, is not.  The courts that have considered whether a violation of the stay justifies a denial of the right of offset have disagreed. *In re Bourne*, 262 B.R. 745, 759 (Bankr. E.D. Tenn. 2001) (comparing *United States v. Ruff (In re Rush Hampton Indus., Inc.)*, 98 F.3d 614, 615-17 (11th Cir. 1996) *with First Union Nat'l Bank of Florida v. Abbey Fin. Corp. (In re Abbey Fin. Corp.)*, 198 B.R. 89, 93 (Bankr. D. Mass. 1996)).  To make the determination, the *Bourne* court considered whether the violation caused any harm to other creditors:

> In light of the court's ruling regarding the debtor's exemption claim, there is no indication that the United States would not have been granted relief from the stay if it had been requested prior to the setoff. *See In re Gribben,* 158 B.R. at 925 (setoff permitted notwithstanding stay violation where IRS would have been entitled to stay relief if timely requested); *In re Jones,* 230 B.R. at 883 (since stay request would have been granted, violation, although not justifiable, was harmless). Accordingly, the IRS's inadvertent stay violation does not preclude the United States' right of offset.

*In re Bourne*, 262 B.R. at 760. Like the *Bourne* court, this court does not find that the violation of the stay has caused any harm to any third party creditors. The Debtors' intended to exempt the entire refund. There is no statutory basis to find that section 362(h) authorizes disallowance of setoff as an appropriate remedy. *In re Rush Hampton Indus. Inc.* 98 F3d 614, 615-17.

Having determined that AAFES is entitled to relief from the stay, the court must determine what relief is appropriate. AAFES has requested annulment. One of the court's options for action on a motion for relief from the automatic stay is to annul the automatic stay under § 362(d). *See Easley v. Pettibone Mich. Corp.,* 990 F.2d 905, 910 (6th Cir. 1993); *see also In re Schewe*, 94 B.R. 938, 951 (Bankr. W.D. Mich. 1989). Annulling the stay provides relief to a creditor by validating an action that occurred while the creditor was unaware of the stay. *See In re Benchmark Capital, Inc.*, 490 B.R. 566, 573 (Bankr. E.D. Tenn. 2013) (citing *Easley,* 990 F.2d at 959-10). That is not the case here because the retention of the funds without a request for relief continued for several months after AAFES had notice of the bankruptcy. Courts may annul the stay in cases involving extraordinary circumstances which include "the debtor's bad faith filing of the bankruptcy case; the creditor's lack of knowledge of the applicability of the automatic stay; and unfair prejudice to the creditor." *Id*. (quoting *In re Burrell,* 186 B.R. 230, 235 (Bankr. E.D. Tenn. 1995) (citations omitted)). "Absent a finding of bad faith, courts may also grant retroactive relief if they find that the moving party had no knowledge of the bankruptcy at the time of its action, and the court finds that it would have granted relief before the act, had such relief been timely requested." *Id.* (citation omitted).

In this case, AAFES does not deny that it received notice of the bankruptcy; but it waited to seek relief. Although AAFES would have been entitled to the relief requested had it been timely requested, the court finds that the failure to act promptly prevents the court from annulling the stay in this case. The court will modify the stay to allow AAFES to apply any portion of the overpayment not subject to any injured spouse allocation claim Mrs. Buttrill may have. The stay will remain in effect for 28 days after the entry of this order to provide Mrs. Buttrill an opportunity to make such a claim and file a notice of a claim with the court within 28 days of the

entry of this order. Should no such notice be filed, the AAFES may apply the entire overpayment to its outstanding debts. If a notice of a claim is filed within the time limit set by the court, the stay is modified to allow the offset only to the extent that the tax refund exceeds the amount claimed by Mrs. Buttrill until her claim is resolved.

### VII. Damages

The Debtors have proven a violation of the stay but have not alleged any specific damages under 11 U.S.C. § 362 (h). The court does not find any conduct on the part of AAFES which violates the stay other than retention of the refund during the period prior to filing the motion. Given the court's ruling on AAFES's rights to offset the overpayment, the court does not have any evidence that the Debtors have been deprived of any property to which they would have otherwise been entitled. Therefore, the court will not award any damages against AAFES.

The court's ruling is without prejudice to any claim Mrs. Buttrill may have should there be an additional violation of the stay related to her injured spouse claim.

A separate order will enter.